*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1053**

State of Minnesota,
Respondent,

vs.

Jeremy Jermaine Chamberlain,
Appellant.

**Filed May 20, 2024**
**Affirmed**
**Bjorkman, Judge**

Sherburne County District Court
File No. 71-CR-21-861

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, George R. Kennedy, Assistant County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his conviction of theft of a motor vehicle arguing: (1) the evidence is not sufficient to prove that he knew or had reason to know that the vehicle was

stolen, (2) the district court plainly erred by admitting testimony about the 911 call that precipitated his encounter with police, and (3) the prosecutor committed unobjected-to misconduct in closing argument by referencing the 911-call testimony and shifting the burden of proof to appellant. We affirm.

**FACTS**

On April 15, 2021, M.A. reported to law enforcement that his 2011 Chevy Equinox was stolen from the parking lot of his apartment building in St. Cloud. On May 12, St. Cloud police received an anonymous 911 call alerting them that two men were recklessly driving a vehicle in the parking lot of a different apartment building and had almost crashed into the building. The caller provided a description of the vehicle and the license-plate number; both matched M.A.'s stolen Chevy.

Three officers responded. When the first two officers arrived, they found M.D.J. sitting in the passenger seat of the Chevy. A second man, later identified as appellant Jeremy Jermaine Chamberlain, was standing outside on the driver's side of the Chevy near the trunk with the driver's door open. The officers removed M.D.J. from the Chevy and handcuffed and detained both men. After he was placed in the back of a squad car, Chamberlain asked for his cellphone. One of the officers located and retrieved it from the driver's seat of the Chevy, where it was plugged into the vehicle's charging port. M.D.J. told an officer that neither he nor Chamberlain owned the Chevy.

When the third officer arrived, he searched the Chevy. In the Chevy's trunk, the officer found a black purse containing a wallet and an insurance card belonging to a

woman. The officer called the woman, who reported that her black purse was recently stolen. Officers later called M.A. to retrieve the Chevy from the scene.

Respondent State of Minnesota charged Chamberlain with motor-vehicle theft and receiving stolen property. The case proceeded to a jury trial during which the state offered testimony from the three officers, M.D.J., and M.A. M.A. testified that the broken ignition key that officers found in the Chevy was in the vehicle at the time it was stolen. He described the Chevy's damaged condition following the theft, including a missing rear-view mirror and damage to the front bumper and the gasket of the driver's window. M.A. also testified that the phone charging port does not work unless the Chevy is running.

The jury found Chamberlain guilty as charged. The district court convicted him of motor-vehicle theft and imposed a sentence of 13 months' imprisonment.

Chamberlain appeals.

**DECISION**

I. **Sufficient evidence supports the jury's determination that Chamberlain knew or had reason to know that the Chevy was stolen.**

A person commits theft of a motor vehicle when they "take[] or drive[] a motor vehicle without the consent of the owner or an authorized agent of the owner, knowing or having reason to know that the owner or an authorized agent of the owner did not give consent." Minn. Stat. § 609.52, subd. 2(a)(17) (2020). Chamberlain argues that the evidence is insufficient to support the knowledge element of the offense. A defendant's knowledge may be proved by circumstantial evidence. *State v. Al-Naseer*, 734 N.W.2d 679, 688 (Minn. 2007).

3

When a sufficiency challenge relates to circumstantial evidence, we apply a two-step analysis. *State v. Harris*, 895 N.W.2d 592, 598-601 (Minn. 2017). First, we identify the circumstances proved "by resolving all questions of fact in favor of the jury's verdict," giving deference to the jury's credibility determinations. *Id.* at 600. Second, "we consider the reasonable inferences that can be drawn from the circumstances proved." *Id.* at 601. The circumstances proved must, when viewed as a whole, "be consistent with a reasonable inference that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *Id.* "But we will not overturn a guilty verdict on conjecture alone." *State v. Hayes*, 831 N.W.2d 546, 553 (Minn. 2013).

Here, the circumstances proved are as follows. On April 15, 2021, M.A.'s Chevy was stolen with a broken ignition key inside. On May 12, 2021, police officers found Chamberlain standing outside the driver's side of the Chevy, near the trunk, with the driver's door open. M.D.J. was sitting in the passenger seat and told officers that the Chevy did not belong to Chamberlain. The broken ignition key was in the car and a purse stolen from a different individual on a different date was in the trunk. The Chevy had a broken gasket on the driver's window. Neither Chamberlain nor M.D.J. owned the Chevy. M.A. does not know Chamberlain or M.D.J. and did not consent to either of them using the Chevy.

Chamberlain argues that the state's evidence is insufficient to show that he knew or had reason to know that the owner of the Chevy did not consent to someone else using it.[1]

---

[1] Chamberlain also argues there is insufficient evidence to support the knowledge element of the possession-of-stolen-property offense. Minn. Stat. § 609.53, subd. 1 (2020)

4

We disagree. The Chevy had damage to the driver's window, a broken ignition key, and a stolen purse in the trunk. And passenger M.D.J. expressed his knowledge at the scene that Chamberlain did not own the Chevy. We are satisfied that these circumstances proved are consistent with a reasonable inference of guilt.

In contrast, Chamberlain does not articulate a reasonable hypothesis of innocence from these circumstances. Instead, he points to the fact that the car was missing for about a month,[2] his compliance with the officers, and the lack of evidence—aside from the broken gasket on the driver's window—of forced entry. We are not persuaded. First, this evidence is not part of the circumstances proved. *See State v. German*, 929 N.W.2d 466, 472 (Minn. App. 2019) (circumstances proved are those that are consistent with the jury verdict). Second, an appellant "cannot rely on the absence of evidence to establish a reasonable hypothesis of innocence." *State v. McMahon*, No. A18-1620, 2019 WL

---

(defining offense to include "any person who receives [or] possesses . . . any stolen property . . . knowing or having reason to know the property was stolen"). The amended warrant of commitment indicates that this count was dismissed. But even if it was not, Chamberlain's sufficiency argument fails for the reasons stated above.

[2] Both parties cite *State v. Hager*, which holds that the "unexplained possession of stolen property within a reasonable time after a . . . theft will in and of itself be sufficient to sustain a conviction." 727 N.W.2d 668, 678 (Minn. App. 2007) (quotation omitted). Chamberlain argues that the passage of almost a month is not a "reasonable time" and therefore not sufficient to sustain a conviction; the state contends otherwise. We need not determine what constitutes a "reasonable time" because the other circumstantial evidence is sufficient to sustain Chamberlain's conviction. And Minnesota caselaw suggests that unexplained possession, regardless of the amount of time passed, is sufficient to sustain the conviction. *State v. Bagley*, 175 N.W.2d 448, 454 (Minn. 1970) (stating roughly four months after a series of burglaries began was still a reasonable amount of time within which to discover the stolen goods).

5

4008101, at \*5 (Minn. App. Aug. 26, 2019)[3] (an appellant must provide a basis to reverse by pointing to evidence in the record that is consistent with a rational theory other than guilt).  Chamberlain's argument does precisely that.

Because the circumstances proved are consistent with a finding of guilt and inconsistent with any reasonable hypothesis of innocence, we conclude that sufficient evidence supports the jury's determination that Chamberlain knew or reasonably knew the Chevy was stolen.

## II.     Any error in admitting the unobjected-to testimony regarding the 911 call did not affect Chamberlain's substantial rights.

Chamberlain also challenges the admission of the police officers' testimony about the 911 call, arguing that it is inadmissible hearsay.  Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  Minn. R. Evid. 801(c).  Such statements are inadmissible unless they fall within several enumerated exceptions.  *See* Minn. R. Evid. 803, 804.  "The number and variety of exceptions to the hearsay exclusion make objections to such testimony particularly important . . . [so] that a full discussion of admissibility [can] be conducted at trial."  *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006).

Where, as here, there was no objection at trial, we review for plain error, considering whether (1) there was error, (2) the error is plain, and (3) the error affects the appellant's substantial rights.  *State v. Epps*, 964 N.W.2d 419, 422-23 (Minn. 2021).  An error is plain if it clearly "contravenes case law, a rule, or a standard of conduct."  *State v. Wren*, 738

---

[3] We cite nonprecedential opinions for their persuasive authority.  Minn. R. Civ. App. P. 136.01, subd. 1(c).

N.W.2d 378, 393 (Minn. 2007) (quotation omitted). Such an error affects a defendant's substantial rights if "the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). Even if the three plain-error prongs are established, we may only grant relief if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Huber*, 877 N.W.2d 519, 522 (Minn. 2016) (quotation omitted).

The challenged testimony of the three officers is as follows. A 911 call was received, and the caller informed the police that two men were recklessly driving a car in the parking lot of an apartment building. Chamberlain contends that this testimony is hearsay, and its admission affected his substantial rights because it was used to prove that he took or drove the Chevy. These contentions are unavailing.

First, we are not convinced that admission of this testimony constitutes plain error. Indeed, evidence of reports made to police are "generally admissible to give jurors the context for an investigation." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014); *see Griller*, 583 N.W.2d at 743 (holding no abuse of discretion in admitting letter sent to police department and content of police interviews with neighbors because the testimony "provided the jury with the context necessary to explain how the investigation against Griller began and why the police were excavating [Griller's] backyard"); *see also* Minn. R. Evid. 402 (stating unless otherwise excluded, all relevant evidence is admissible). Second, the record does not persuade us that admission of the challenged testimony affected Chamberlain's substantial rights. Even without the 911 call, there is sufficient evidence that Chamberlain took or drove the Chevy. When the officers arrived, the stolen

Chevy was at the reported location. Chamberlain was standing next to the driver's side and the driver's door was open. His cellphone was on the driver's seat and plugged into the charging port, which only works if the Chevy is running.

In sum, the challenged 911-call testimony provided context for the officer's encounter with Chamberlain. The lack of a timely objection deprived the state of the opportunity to reframe its questions or argue that an exception to the hearsay rule applied. More importantly, our careful review of the record persuades us that any error in admitting this testimony did not affect Chamberlain's substantial rights to warrant relief on appeal.

### III. The prosecutor did not commit misconduct or error in closing argument.

Because Chamberlain did not object to the claimed prosecutorial misconduct, we apply a modified plain-error test. *Epps*, 964 N.W.2d at 423. Under this test, Chamberlain bears the burden to show both that the prosecutor committed error and that the error is plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). If he makes such a showing, the burden shifts to the state to demonstrate that the error did not prejudice the appellant's substantial rights. *Id.* And if the state fails to meet that burden, we determine whether reversal is required to uphold the fairness and integrity of judicial proceedings. *Id.*

Prosecutors have "considerable latitude in closing argument" and are not "required to make a colorless argument." *State v. Smith*, 541 N.W.2d 584, 589 (Minn. 1996). A prosecutor "may present all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence in its closing argument." *State v. Munt*, 831 N.W.2d 569, 587 (Minn. 2013) (quotation omitted). But comments that misstate or dilute the state's burden of proof are "highly improper and constitute[] prosecutorial misconduct." *State v.*

8

*McDaniel*, 777 N.W.2d 739, 750 (Minn. 2010) (quotation omitted). In determining whether a prosecutor committed plain error in a closing argument, we consider "the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence." *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993).

Chamberlain argues that the prosecutor's closing argument improperly shifted the burden to Chamberlain on the knowledge element of the motor-vehicle theft offense.[4] The prosecutor said:

> So, know or have reason to know that something is stolen. What does that mean? You can't—when you go in the world you're not allowed to put your head in the sand and say, "Give me that. I don't know that that—I don't know that that's stolen." You're not allowed to just take property, possess property, and say, "Prove I knew that it was stolen." The law allows for that.
>
> [We] [h]ave reason to know that it's stolen. . . . It's an expensive object. It's not something that you readily hand out to other people. . . . [I]t is an unusual object in that it has an inherent piece that you need to get into that vehicle, which is a key. Someone has to give you a key . . . .
>
> So when you are sitting in a vehicle with a broken key, with no rearview mirror, with a stolen purse, with somebody else's wallet, with perhaps controlled substances in the vehicle and you know it doesn't belong to you, you have knowledge or reason to know that that vehicle is stolen. If you know that your passenger didn't have a right to that vehicle, that you have no right to that vehicle, you know it's not yours, and "we just sat down," you know or have reason to know that vehicle is stolen.

---

[4] Chamberlain also asserts that the prosecutor committed misconduct in closing argument by discussing the officers' testimony about the 911 call. Because we conclude that admission of that testimony was not plain error, the prosecutor did not err or commit misconduct by referencing it in closing argument.

Chamberlain asserts that he is entitled to a new trial because a curative instruction should have been given and that the prosecutor or the district court should have reiterated that the burden of proof is on the state. The state responds that the prosecutor was simply explaining the difference between "knowing" and "having reason to know" that an item is stolen. The state has the better argument.

Review of the closing argument as a whole demonstrates that the prosecutor made the challenged statements while describing the circumstances that prove Chamberlain had the requisite knowledge. On rebuttal, the prosecutor returned to the topic of distinguishing between "knowing" and "having reason to know" something is stolen. While the prosecutor could have chosen different words to make this point, we do not read the closing argument to impermissibly shift the burden of proof to Chamberlain. Rather, the closing argument urged the jury only to determine that the circumstantial evidence of Chamberlain's knowledge was sufficient to find him guilty. On this record, we discern no prejudicial misconduct.

**Affirmed.**